IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932-GCM
(3:06 CV 306 - GCM)

| | |
|---|---|
| IRENE GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 196) and Memorandum in Support (Doc. No. 197); Plaintiff, Tanya Warren-Thomas', ("Warren") Response in Opposition (Doc. No. 343); and Defendant's Reply (Doc. No. 384).[1]

For the reasons set forth below, the motion is **GRANTED**.

## FACTS

Plaintiff Warren worked at Family Dollar Stores as a Store Manager from November 2005 until September 2006. Warren was demoted back to Assistant Store Manager in September

---

[1]Plaintiff Tanya Warren-Thomas' case comes before this court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed Ms. Grace from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both Orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor Family Dollar Stores, Inc. See Grace v. Family Dollar Stores, Inc., 637 F.3d 508 (4th Cir. 2011).

1

2006. At the time Warren became Store Manager, Family Dollar paid Warren a salary of $500 per week. (Warren Deposition 40:18-19, June 18, 2009.)

Warren was responsible for completing tax forms, reviewing company policies and procedures with new hires, maintaining employee tax records, conducting performance reviews of her employees, ensuring all shifts were covered, stocking and accounting for store merchandise, planning and apportioning work among her employees, handling employee complaints, and ensuring employee and customer safety. (Id. at 67:7-21, 92:7-15, 137:1-21, 145:23-146:4, 167:21-23, 188:9-189:4, 193:17-18, 211:3-20, 226:4-11.) Warren also alleges that she spent 85-90% of the time during the week unloading trucks, stocking shelves, cleaning the store, waiting on customers, and running registers, tasks she asserts are non-managerial in nature. (Id. at 256:15-258:2.) Family Dollar maintains that Warren was free from supervision since her District Manager was in charge of large territories, did not visit her store frequently, and was not a micro-manager. Warren, however, testified that she had little discretion and was bound by her District Manager and company policy. (Id. at 258:14-260:20.)

Warren testified that there were four to five employees at the store she managed. (Id. at 55:5-9, 113:2-8.) She admits to scheduling an Assistant Store Manager to be present in the store on a daily basis. (Id. at 163:7-13.) Warren also admits to having at least ten non-Assistant Manager employees throughout her time as Store Manager. (Id. at 56:2-57:13.)

It is undisputed that Warren did not have the authority to hire or fire. However, Warren testified that she interviewed candidates as part of the screening process and made recommendations to her District Manager. (Warren Dep. 104:16-18, 83:12-84:3.) Warren verified in her deposition that she screened applications on numerous occasions and took some

2

applications out of the running. (Id. at 83:4-84:3.) Warren also admits to interviewing potential employees and personally determining whether the interviewees' answers were satisfactory, and said she gave written and verbal offers of employment. (Id. at 87:10-23, 94:2-9, 107:18-22.) Additionally, Warren testified that she gave verbal or written disciplinary warnings for employee misconduct. (*Id.* at 142:13-22, 170:15-22.) She investigated and reported employee misconduct because she was ultimately responsible for the shrink problem and the store's overall success. (Id. at 204-206, 241:9-18.)

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Bouchat v. Balt. Ravens Football Club, 346 F.3d 514, 519 (4th Cir. 2003). The Supreme Court has observed that "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A dispute over a material fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. As to materiality, the substantive law will identify which facts are material. Id.

When reviewing summary judgment motions, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). This means

3

adopting the plaintiff's version of the facts. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 325. "Once the moving party has met that burden, the nonmoving party must come forward and demonstrate that such an issue does, in fact, exist." Bouchat, 346 F.3d at 522. (Relying on Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). Finally summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586.

## COLLATERAL ESTOPPEL CLAIM

Warren claims Family Dollar should be prohibited from arguing that Store Managers are exempt from Fair Labor Standards Act ("FLSA") coverage due to the executive exemption based on collateral estoppel pursuant to Morgan v. Family Dollar Stores, Inc., No. 7:01-cv-0303-UWC, 2006 WL 1388201 (N.D. Ala., Mar. 31, 2006) and Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233 (11th Cir. 2008).

The proponent of a collateral estoppel claim must first show that "the issue sought to be precluded is identical to one previously litigated." Sedlack v. Braswell Servs. Grp, Inc., 134 F. 3d 219, 224 (4th Cir. 1998) (citing Ramsay v. U.S. Immigration and Naturalization Serv., 14 F.3d 206, 210 (4th Cir. 1994)). Warren fails to meet the first requirement; the fact-specific details of Warren's responsibilities and actions as Store Manager were not addressed in Morgan. See Morgan, 551 F.3d 1233; see also Grace v. Family Dollar Stores, Inc., 637 F.3d 508, 518 (4th Cir. 2011) (concluding that there was no basis in the record to support Grace's claim that her facts and the facts in Morgan were the same). The Fourth Circuit specifically concluded in Grace that

4

"while Family Dollar may have had the same policies throughout its system, the individual responsibilities of managers could well have differed." Id. Warren's specific status as an exempt executive has not previously been addressed; therefore, the collateral estoppel claim fails.[2] Petitioner's collateral estoppel argument is not persuasive and will not receive further consideration.

**DISCUSSION**

The Fair Labor Standards Act requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). However, the statute exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations, which further describe and interpret the scope of this exemption. The current regulations went into effect on August 23, 2004, and should be applied to this analysis, as Warren began work in 2005. The regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

**1.      Family Dollar Satisfies the Salary Basis Test**

Family Dollar satisfies the salary basis test under the current regulations, which require a

---

[2] Moreover, this Court has clearly stated that this case is not Morgan and therefore, this Court would not be following the Morgan Court. (Doc. No. 104 at 3).

weekly salary of not less than $455 per week. 29 C.F.R. § 541.100(a)(1). In 2005, Warren became a store manager and Family Dollar paid her a salary of $500 per week. (Warren Dep. at 40:18-19.) Moreover, Warren concedes that she met the salary requirement. (Doc. No. 343 at 16, n. 2). Because her salary was above the minimum amount promulgated by the 2004 regulations, Warren satisfies the salary basis test.

**2.      Family Dollar Satisfies the Primary Duty Test**

Family Dollar has demonstrated Warren's primary duty was the management of the store, and has therefore satisfied the primary duty test. The regulations provide guidance as to how an employee's primary duty may be determined and instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations provide additional guidance that primary duty "means the principal, main, major or most important duty that the employee performs" and that the "major emphasis" should be on the character of the employee's job as a whole. Id. To determine whether something is a "primary duty," four factors are considered: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. Id.

**a.      The Amount of Time Spent in the Performance of Managerial Duties**

Warren performed a number of managerial duties, and spent significant time on those tasks. The current regulations provide a list of "management" activities, which include but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. In her deposition, Warren explicitly testified that she regularly performed a majority of these management activities (see extensive list in the facts). Warren cannot defeat the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations set forth a general rule of thumb that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). However, the regulations emphasize that "time alone…is not the sole test" and that exempt executives are not *required* to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty. Id.; see also Grace, 637 F.3d at 517 ("It is misleading simply to add up the time that she spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager."); see also Haines v. S. Retailers, Inc., 939 F.Supp. 441, 450 (E.D. Va. 1996) (holding store manager was exempt executive even though the majority of his time was spent on non-exempt responsibilities).

Furthermore, the regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. This section instructs that"[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of §

541.100 are otherwise met." Id. at (a). Warren performed her non-managerial work concurrently with her exempt managerial work. (Warren Dep. 136:4-18.) As the court stated in Grace, "to be sure, each of these tasks was nonmanagerial, but she performed these tasks in the context of her overall responsibility to see that the store operated successfully and profitably, and they were important to fulfilling her goals and responsibilities." 637 F.3d at 517. For example, Warren testified that she trained new employees showed them how to order, unloaded the truck and did paperwork while running the store. (Warren Dep. 71:21-73:5.) Further, Warren recognized that she frequently multitasked. For example, she would evaluate the condition of the store and watch out for theft while simultaneously stocking merchandise. (Id. at 199:17-200:6.) Warren testified that she was ultimately responsible for the management of the store even if she had another employee complete the task. (Id. at 220:17-221:3, 222:22-223:7.) Likewise, while Warren was doing physical, non-managerial tasks, she also was responsible for making sure the whole store ran successfully at the same time. As she stated, "I was always store manager." (Id. at 200:17-20.) According to the Fourth Circuit, "this multi-tasking - doing management jobs while doing nonexempt work - is explicitly recognized as a managerial duty by the Department of Labor's regulations, which describe the situation where a retail manager performs concurrent nonmanagement duties." Grace, 637 F.3d at 516.

   b.   **The Relative Importance of Managerial Duties as Compared with Other Duties**

Warren's managerial duties are more important than other duties that she performed. Courts evaluate the relative importance of an employee's managerial duties by measuring "the significance of the managerial tasks to the success of the facility." Jones v. Va. Oil Co., 69 F.

App'x 633, 637 (4th Cir. 2003). As Store Manager, Warren was in charge and responsible for ensuring the success of the store. (Warren Dep. 249:4-6, 247:19-248:4.) Warren was the only one in the store responsible for correcting the shrink problem. (Id. at 241:12-18.) As in Grace, where "there was no one else at the site to direct the[se] actions," Warren seems to have been the only person assigned to some of the necessary tasks, indicating that her performance of these duties was important. 637 F.3d at 517. Warren admits that even when she was not in the store, employees would call her if there was a problem and she would handle it. (Warren Dep. 158:19-159:12.) Warren also admits that even if she did not complete a task she was still ultimately responsible. (Id. at 220:17-221:3.) Warren's responsibilities are among those that the Fourth Circuit finds "critical to the success" of the facility. Jones, 69 Fed. App'x at 638 (holding the employee's managerial functions were "critical to the success" of the store because it "could not have operated successfully unless she performed her managerial functions"). Thus, Family Dollar could not have operated successfully without the functions performed by Warren, and her managerial duties, as compared with other types of duties, were very important to ensuring the store's success.

  c. **Warren's Relative Freedom from Supervision**

Warren was relatively free from supervision in managing her store, further supporting the argument that she was a manager. Courts have held that store managers were still considered managers, even when a district manager supervised them. See Thomas v. Speedway Superamerica, L.L.C., 506 F.3d 496, 507 (6th Cir. 2007) (quoting Murray v. Stuckey's Inc. (Murray I), 939 F.2d 614, 619 (8th Cir. 1991)) ("A 'local store manager's job is [no] less managerial for FLSA purposes simply because ... she has an active [district manager]."). The fact

that Warren had a district manager does not preclude her from being considered a manager herself.

The amount of time Warren's District Manager supervised her demonstrates she was relatively free from his supervision. Warren testified that Richard Borsdorf, her District Manager, only came in for an hour at most when visiting the store. (Warren Dep. 265:2-6); see also Grace, 637 F.3d at 517 (holding plaintiff was relatively free from supervision when the manager visited the store once every two to three weeks and supervised seventeen stores at the same time). Borsdorf was responsible for nineteen stores in a district that spanned 94.5 miles from north to south and 145 miles east to west. (Fontes Decl. ¶ 3.) Warren also testified that the closest Family Dollar store was 60 miles away. (Warren Dep. 45:18-46:1.) Though she was in contact with Borsdorf by telephone and email, Warren does not allege that Borsdorf was a micro-manager who constantly looked over her shoulder. On the contrary, Warren testified that she disciplined employees at her own discretion and independently selected appropriate applications for new hires. (Id. at 174:1-22, 83:1-8.) Borsdorf further testified he did not micro-manage Warren, saying, "she's the store manager and she's in charge of the store." (Borsdorf Dep. at 18.)

Courts have found that employees were relatively free from supervision in circumstances where the exempt executive was subject to substantially greater oversight than Warren. In Thomas, the district manager visited each store once or twice per week and communicated frequently by phone and email. 506 F.3d at 499, 507; see also Jones, 69 F. App'x. 633, 635–38 (holding employee was sufficiently free from supervision when the District Manager visited one to four times each week). Nevertheless, the Sixth Circuit, in Thomas, found that the plaintiff was relatively free from supervision, recognizing that the factor "does not demand complete freedom

10

from supervision," and noting that the plaintiff operated on a day-to-day basis without a supervisor looking over her shoulder and that "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. 506 F.3d at 508. The court also noted that "[i]n addition to stringent managerial oversight, Speedway has also adopted detailed company policies and standardized operating procedures, as an additional means of fostering consistency through its multi-store organization." Id. Even though there were standard operating procedures, the court found the manager was free from direct supervision. Similarly, because Warren had fairly limited supervision from her District Manager and because that supervision was less than that which courts have found to be sufficient, Warren was relatively free from supervision.

    **d.**  **The Relationship Between Warren's Salary and the Wages Paid Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

Warren earned significantly more than nonexempt store employees for the same kind of nonexempt work. Starting in November 2005, Warren received $500 per week. (Warren Dep. 40:18-19.) Warren also became eligible for and received bonuses during her tenure as Store Manager. Warren worked an average of fifty two to sixty hours per week. (Interrogatory Response No. 21.) Setting aside any bonus payments, this results in an average hourly wage of between $9.62 per hour (52 hour week) and $8.33 per hour (60 hour week). In comparison, according to Warren, one Assistant Store Manager received a raise to six dollars an hour when moving from clerk to Assistant. (Warren Dep. 69:10-21.) Furthermore, Warren made $6.20 as a full time employee for the store before becoming Store Manager. (Id. at 41:1-4.) Warren's salary, therefore, was significantly higher than that paid to other employees performing the same type of

nonexempt work.

3.  **Warren Customarily and Regularly Directed the Work of Two or More Employees**

Warren regularly directed the work of at least four employees, well above the requirement. The regulations require that an employee customarily and regularly direct the work of two or more other employees to qualify as an executive. 29 C.F.R. § 541.100(a)(3). The regulations state that the phrase "customarily and regularly" "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. As a general rule of thumb, the DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. See 69 Fed. Reg. 22135; see also Grace, 637 F.3d at 513 (holding that 89.23% of each week was enough to not be substantially in dispute).

Warren testified that at the store she managed, the number of employees was usually four or five. (Warren Dep. 55:9, 113:6-8.) Warren concedes that there were two or more full time employees in her store. (Doc. No. 343 at 16 n. 2).[3] In Grace, the plaintiff testified the number of employees in the store was between three and five. 637 F.3d at 513. Because the Fourth Circuit found Grace customarily directed the work of other employees when she only directed three to five employees, it follows that the direction of four to five by Warren should satisfy the requirement, as well. Although there were occasions when she did not have an Assistant Store Manager in her store, this was a temporary situation related to turnover. (Id. at 55:13-56:1.) Warren testified that an Assistant Store Manager was scheduled to be in the store daily. (Id. at

---

[3] While Plaintiff makes this concession, she maintains that she did not direct these employees.

163:7-9.) Warren also admits that along with the Assistant Store Managers, ten other individuals worked in her store as clerks, stock persons, or cashiers. (Id. at 56:2-57:13.) Warren's testimony makes it apparent that she customarily and regularly direct at least two employees.

**4.     Warren Had Authority and Discretion with Regard to Interviewing and Hiring and Her Recommendations Were Closely Followed**

Warren's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions as to the hiring, firing, and change of status of other employees were given particular weight. 29 C.F.R. § 541.100(a)(4). Warren testified in her deposition that she regularly received, screened and reviewed applications for potential employees. (Warren Dep. at 60:22-61:2, 83:12-84:3.) Warren determined which applicants had the right qualifications, eliminating those which she deemed unqualified. (Id. at 82:21-83:8.) Along with the application process, Warren conducted interviews and gave both written and verbal offers of employment. (Id. at 87:10-23, 107:18-22.) Warren also made recommendations as to the promotion of employees. (Id. at 67:7-68:4.) Warren decided when a new employee was needed, and she decided which applications she would go over with her District Manager. (Id. at 85:14-86:5.)

With respect to the termination of employees, if there were a performance issue with a particular employee, Warren wrote the employee up and signed the written record. (Id. at 169:22-170:5.) Warren had the ability to determine when an issue would go beyond counseling and become a termination; for example, she instructed an employee not to have any tardies for thirty days or be terminated. (Id. at 180:3-21.) Warren also investigated and reported an employee falsifying refunds, which led to that employee's termination. (Id. at 204-206.) Overall, while

13

Warren may not have had the ultimate decision-making authority with respect to hiring, firing, and change of status, she made frequent recommendations as to those matters, and her recommendations were almost always followed, thereby satisfying the requirement.

## CONCLUSION

Family Dollar has satisfied the Department of Labor regulations establishing that Warren qualifies as an exempt executive under the Fair Labor Standards Act. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

**IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff Warren-Thomas is dismissed;

(2) The Court finds that there is no just reason to delay entry of final judgment for Family Dollar with respect to Plaintiff Tanya Warren-Thomas' claim against Family Dollar;[4]

(3) The clerk is, therefore, directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with respect to Plaintiff Tonya Warren-Thomas.

---

[4] Indeed, this is one of approximately fifty ripe motions for summary judgment filed in this MDL case. The Court anticipates that at least fifty more motions for summary judgment will be filed.

**SO ORDERED.**

Signed: July 29, 2011

Graham C. Mullen
United States District Judge