IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932-GCM
3:06 CV 306-GCM

| | |
|---|---|
| IRENE GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment (Doc. No. 212) and Memorandum in Support (Doc. No. 213); Plaintiff, Catherine Dawson's (Dawson) Response in Opposition (Doc. No. 369); and Defendant's Reply (Doc. No. 414).[1] For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

Plaintiff Dawson worked at Family Dollar Stores as a Store Manager from February 2005 until June 2006. (Dawson Deposition, June 24 2009.) Dawson was initially hired to work at the Cleveland Store in Gainesville, GA as a cashier, (Dawson Deposition at 23-24), and was first promoted to work as a manager for the Thompson Bridge Store in February 2005. (Id. at 29-30).

---

[1] Plaintiff Catherine Dawson's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed Ms. Grace from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manger, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. See Grace v. Family Dollar Stores, Inc., 637 F.3d 508 (4th Cir. 2011).

[2] To the extent that Plaintiff includes in her facts section arguments based on the Morgan case, the Court will disregard such "facts." The Court will also disregard exhibits based on the Morgan case. This Court has clearly stated that this case is not Morgan and therefore would not be following the Morgan Court. (Doc. No. 104 at 3)

1

Dawson states that the Thompson Bridge store schedule allocated two cashiers and one Assistant Store Manager. (Id. at 38:15-17.) She was then chosen to conduct the Grand Opening and manage another Family Dollar store in Gainesville on Cleveland Highway in the summer of 2005. (Id. at 52:21-22). She testified that she managed 10-15 employees when opening the Cleveland Highway store. (Id. at 57:20-21.) According to Dawson, the set up crew was eventually cut down to three cashiers and one Assistant Store Manager. (Dawson Deposition at 57:15-16.) Upon promotion to store manager, Family Dollar paid Dawson a salary of $500 per week. (Id. at 49.) Dawson later received a raise to $550 per week and another raise to $624 per week. (Id. at 49:23-50:20.) Dawson also received bonuses as Store Manager which were tied to the store's profitability. (Id. At 53:24-55:25).

In her capacity as manager Dawson screened, conducted initial interviews and made offers of employment to various potential employees. (Id. at 66:4-10, 62:10-17.) This included the regular screening, interviewing and hiring of cashiers. (Dawson Dep. at 66:4-10, 45:21-23, 45:4-8.) Dawson's District Manager, partly responsible for hiring, followed Dawson's recommendations most of the time. (Id. at 69:14-20.) Dawson was responsible for conducting and signing off on drug tests for potential employees as well as other legal and company forms. (Id. at 63, 73:18-74:15.) Dawson was also responsible for maintaining the petty cash, deposit and sales logs. (Id. at 141:6-12, 142:6:13.) Additionally Dawson trained employees, scheduled employees, assigned and delegated work, handled customer complaints and accounted for customer safety. (Id. at 103:5-12, 120:2-4, 131:12-132:5, 79:24-80:7, 124:16-125:4, 147:17-148:2.) As Store Manager, Dawson was responsible for the overall performance of the store. (Id. at 81:15-18).

Dawson testified that she worked well over 52 hours a week and that she spent 90-95%

2

of her time unloading the truck, stocking shelves, running the cash register and cleaning bathrooms. (Id. at 150:7-12.) Family Dollar maintains that Dawson was free from supervision as her District Manager was in charge of a large territory and was not a micro-manager. However, Dawson alleges pervasive corporate micro-management in her declaration. (Dawson Declaration ¶ 16.)[3] Dawson's declaration further alleges that she was not in charge of the store and not responsible for supervising employees. (Id. at 17.)

It is undisputed that Dawson did not have the ultimate decision-making authority to hire or change every employee's status. Family Dollar alleges that Dawson made recommendations regarding hiring, firing or change of status to her district manager and that these recommendations were followed. Dawson admits she had the ability to hire cashiers on the spot. (Dawson Deposition at 45:4-8.) While Dawson did not have the same ability to hire assistant store managers and other employees without approval; she did recommend candidates and those recommendations were followed. (Id. at 69:16-20.) Dawson also testified that Family Dollar gave her the authority to decide whether an employee should be disciplined and what type of discipline an employee should receive. (Id. at 121:5-10, 124:24-125:1.)

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to

---

[3] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to subsequent affidavit of the deponent contradicting the prior sworn testimony. Indeed, "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct. Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting Halperin v. Abacus Tec. Corp., 128 F.3d 191, 198 (4th Cir. 1997); see also Waste Mgmt. Holdings, Inc. V. Gilmore, 252 F.3d 316, 341 (4th Cir. 2001); Rohrbough v. Wyeth Labs., 916 F.2d 970, 975-76 (4th Cir. 1990); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar Store. See Grace, 637 F.3d at 513.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Bouchat v. Balt. Ravens Football Club, 346 F.3d 514 (4th Cir. 2003). The Supreme Court has observed that, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A dispute over a material fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. As to materiality, the substantive law will identify which facts are material. *Id.*

When reviewing summary judgment motions courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." United States v. Diebold, Inc., 369 U.S. 654, 655, (1962). This means adopting the Plaintiff's version of the facts. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 325. "Once the moving party has met that burden, the nonmoving party must come forward and demonstrate that such an issue does, in fact, exist." Bouchat, 346 F.3d at 522. (Relying on Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) Finally, Summary Judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586.

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if they work more than forty hours a week. 29 U.S.C. § 207(a)(1). However, the statute exempts from this requirement "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations, which further describe and interpret the scope of this exemption. The current regulations went into effect on August 23, 2004 and should be applied to this analysis as Ms. Dawson began work as a manager in February 2005. (Declaration of Penny Sundberg at ¶ 4) The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week: (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

### 1. Family Dollar Satisfies the Salary Basis Test

Family Dollar satisfies the salary basis test under the current regulations, which require a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100(a)(1). Beginning in February 2005, Family Dollar paid Dawson a salary of $500 per week. (Dawson Dep. at 49.) Dawson received a raise to $550 per week and another raise to $624 per week. (Id. at 49:23-50:20.) Due to her salary rising above the minimum amount promulgated by the current regulation Dawson satisfies the salary basis test.

### 2. Family Dollar Satisfies the Primary Duty Test

Family Dollar has demonstrated Dawson's primary duty is the management of the store

and has therefore satisfied the primary duty test. The regulations provide guidance as to how an employee's primary duty may be determined and instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations provide additional insight that primary duty "means the principal, main, major or most important duty that the employee performs" and that the "major emphasis" should be on the character of the employee's job as a whole. *Id.* To determine whether something is a "primary duty", four factors are considered: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. *Id.*

### a. The Amount of Time Spent in the Performance of Managerial Duties

The current regulations provide a list of "management" activities, which include but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 CFR § 541.102. Dawson cannot defeat the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations set forth a general rule of thumb that an employee who spends more than fifty percent of his or her time performing managerial

work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). However, the regulations emphasize that "time alone . . . is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty. Id; see also Grace, 637 F.3d at 517 ("it is misleading simply to add up the time she spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby she was merely a clerk and not a manager.")

Furthermore, the regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. This section instructs that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." *Id.* Dawson performed her work concurrently with her exempt managerial work.

The Fourth Circuit recognized that "[w]hile [plaintiff] catalogs the non-managerial jobs that she had to do, claiming that they occupied most of her time, she does so without recognizing that during 100% of the time, even while doing those jobs, she was also the person responsible for running the store." Grace v. Family Dollar Store, Inc., (In re Family Dollar FLSA Litig.), 637 F.3d 508 (4th Cir. 2011)

Similarly as Store Manager, Dawson admits she was ultimately responsible for and expected to run the store. (Dawson Dep. at 56:18-21.) Dawson performed her non-managerial work concurrently with her exempt managerial work. For example, Dawson trained and supervised employees while doing other work. (*Id.* at 100:3-6.) Dawson would also make sure employees were not standing idle while she cleaned or stocked shelves. (*Id.* at 134:13-25.) Like Grace, Dawson "performed these tasks in the context of her overall responsibility to see that the

store operated successfully and profitably, and they were important to fulfilling her goals and responsibilities." Grace, 637 F.3d 508, 517

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Dawson's managerial duties are more important than the other duties she performed. Court's evaluate the relative importance of an employee's managerial duties by measuring "the significance of the managerial tasks to the success of the facility." Jones v. Virginia Oil Co., 69 F. App'x 633, 637 (4th Cir. 2003). The Fourth Circuit recognized that one of the critical factors of importance was determined by the "overall responsibility to see that the store operated successfully and profitably", and that non-managerial duties "were important to fulfilling her goals and responsibilities". Grace at 516. Dawson admits that she was ultimately responsible for the store. (Dawson Dep. at 56:18-21.) Dawson was responsible for recovery, shrink, stock, monthly planner and the door to shelf program. (*Id.* at 84:15-85:11.) Dawson was also responsible for deposits, daily cash and sales logs, security log and daily supervision of employees. (*Id.* at 141:6-12, 142:6-13, 93:4-5, 99:21-100:2.) In the end, Dawson's primary responsibility was for the overall performance of the store. (*Id.* at 81:15-18.) Dawson's performance evaluation, salary and bonus depended directly on her handling of these responsibilities. (*Id.* at 53:24-55:25.) According to Dawson, even when she delegated tasks she was ultimately responsible. (*Id.* at 56:18-21.) Dawson, like Grace, was "performing management duties whenever she was in the store, even though she also devoted most of her time to doing the mundane physical activities necessary for its successful operation." Grace at 517. These actions are among those that the Fourth Circuit finds "critical to the success" of the facility. Jones, 69 Fed. App'x at 638. Thus, Family Dollar could not have operated successfully

without the functions performed by Dawson, and her managerial duties, as compared with other types of duties, were very important to ensuring the store's success.

### c. Dawson's Relative Freedom from Supervision

Dawson was relatively free from supervision in managing her store. Courts have held that store managers were still considered managers, even when a district manager supervised them. See Thomas v. Speedway Superamerica, L.L.C., 506 F.3d 496, 507 (6th Cir. 2007) (quoting Murray v. Stuckey's Inc. (Murray I), 939 F.2d 614, 619 (8th Cir. 1991)) ("A 'local store manager's job is [no] less managerial for FLSA purposes simply because ... she has an active [district manager]."). Therefore, the fact that Dawson had a district manager does not preclude her from being considered a manager herself.

The amount of time Dawson's District Manager supervised her demonstrates she was relatively free from his supervision. Dawson testified that Penny Sundberg, who was Dawson's District Manager, typically only came into the store once every three months. (Dawson Dep. at 108:9-12.) Though she was in contact with Dawson by telephone and email, Dawson does not allege that Sundberg was constantly looking over her shoulder telling her what to do next. On the contrary, Dawson testified that the District Manager was not in the store and that she was the one "on the ground" actually observing employees. (Id. at 109:7-11.)

Courts have found that employees were relatively free from supervision in circumstances where the exempt executive was subject to substantially greater oversight than Dawson. In Thomas, the district manager visited each store once or twice per week and communicated frequently by phone and email. 506 F.3d at 499, 507; see also Jones, 69 F. App'x. 633, 635–38 (holding employee was sufficiently free from supervision when the District Manager visited one

9

to four times each week). Nevertheless, the Sixth Circuit, in Thomas, found that the plaintiff was relatively free from supervision, recognizing that the factor "does not demand complete freedom from supervision," and noting that the plaintiff operated on a day-to-day basis without a supervisor looking over her shoulder and that "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. 506 F.3d at 508. The court also noted that "[i]n addition to stringent managerial oversight, Speedway has also adopted detailed company policies and standardized operating procedures, as an additional means of fostering consistency through its multi-store organization." Id. Even though there were standard operating procedures, the court found the manager was free from direct supervision. Similarly, because Dawson had fairly limited supervision from her District Manager and because that supervision was less than that which courts have found to be sufficient, Dawson was relatively free from supervision.

### d. The Relationship Between Dawson's Salary and the Wages Paid Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

When seeking to compare the wages earned by employees and managers the Fourth Circuit has looked for "two items, first, whether the manager earned more, in absolute terms, than non-managerial employees, and second, whether the manager was a "profit center," namely, whether the manager had the ability to influence the amount of her compensation." Grace at 517. The plaintiff in Grace objectively earned more than her employees and was a "profit center" because "her performance evaluation, salary, and bonus depended on her store's profitability." Id.

Dawson earned significantly more than non-exempt store employees. Starting in February 2005, Family Dollar paid Dawson a salary of $500 per week. (Dawson Dep. at 49.)

10

Dawson received a raise to $550 per week and another raise to $624 per week. (Id. at 49:23-50:20.) Dawson explained that her salary increases were directly tied to inventory, sales, appearance of the store, employee turnover, shrinkage and profit of the store. (Id. at 51:10-52:20). Dawson was also the only employee eligible for bonuses during her tenure as Store Manager. (Id. at 53:24-55:25.) Bonuses were tied to "passing inventory" which meant that the store made a profit. (Id. at 51:1-14). It was Dawson's ultimate responsibility, as Store Manager, to "pass inventory" or make a profit. (Id. at 55:24-56:21). As a Store Manager, Dawson also became eligible for benefits and insurance. (Id. at 50:5-8.) According to Dawson she worked an average of 52 to 65 hours per week. (Id. at 35:18-22.) Setting aside any bonus payments, this results in an average hourly wage of between $9.62 per hour (52 hour week) and $7.69 per hour (65 hour week). After both raises, Dawson made $12.00 per hour (52 hour week) and $9.60 per hour (65 hour week). In comparison Dawson admits that other employees were making $5.50 to $6.00 per hour. (Id. at 75:1-7.) Dawson would also be considered a "profit center" because her raises and bonuses were directly tied to her performance via sales, and various factors measuring the quality of her management. (Dawson Dep. at 51:10-21; 53:24-55:25). In addition to Plaintiff's sworn deposition testimony on this issue, Family Dollar has submitted the declaration of Penny Sundberg, Plaintiff's District Manager, which supports Plaintiff's testimony that she earned a higher salary than the nonexempt employees who worked at the store. (Doc. No. 213-2, ¶ 7: Sundberg Declaration).[4] The evidence establishes that Dawson's salary, therefore, was

---

[4] The Court is aware that Plaintiff objects to the admissibility of Sundberg's declaration. However, by Order dated August 10, 2011, the undersigned concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Significantly, Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the Court. (Doc. No. 590).

significantly higher than that paid to other employees performing the same type of nonexempt work.

### 3. Dawson Customarily and Regularly Directed the Work of Two or More Employees

The regulations require that an employee customarily and regularly direct the work of two or more other employees to qualify as an executive. 29 C.F.R. § 541.100(a)(3). The regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. As a general rule of thumb, the DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. See 69 Fed. Reg. 22135; see also Grace, 637 F.3d at 513 (holding that 89.23% of each week was enough to not be substantially in dispute).

Dawson testified that she managed 10-15 employees when opening the Cleveland store. (Dawson Dep. at 57:20-21.) According to Dawson, the set up crew was eventually cut down to three cashiers and one Assistant Store Manager. (Id. at 57:15-16.) In addition Dawson admits that the Thompson Bridge store schedule called for two cashiers and one Assistant Store Manager. (Id. at 38:15-17.) Furthermore, Family Dollar's records establish that during her tenure as store manager, Dawson directed at least 80 employee hours of work 97.06% of the time.[5] (Doc. No. 213-2 ¶ 5: Sundberg Declaration.). The evidence, including Dawson's testimony and Family Dollar's records on this issue, makes it apparent that Plaintiff customarily and regularly directed at least two employees.

### 4. Dawson Had Authority and Discretion with Regard to Interviewing and Hiring and Her Recommendations Were Closely Followed

---

[5] The undersigned concludes that this declaration is admissible. (See Doc. No. 590).

Dawson's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions as to the hiring, firing, and change of status of other employees were given particular weight. 29 C.F.R. § 541.100(a)(4). Dawson was actively involved in the hiring process by interviewing, recommending, and hiring employees. Dawson interviewed various employees and signed off on drug and alcohol screening for potential employees. (Dawson Dep. at 45:21-23, 63, 73:18-74:15.) Dawson made recommendations regarding hiring, firing or change of status to her district manager and these recommendations were followed. Dawson admits she had the ability to hire cashiers on the spot. (Id. at 45:4-8.) While Dawson did not have the same ability to hire assistant store managers and other employees without approval; she did recommend candidates and those recommendations were followed. (Id. at 69:16-20.)

With respect to termination, Dawson admits to having the ability to discipline employees with discretion. (Id. at 121:5-10, 100:10-12.) While Dawson could not terminate employees, she was responsible for identifying problem employees and recommending termination to the District Manager. (Id. at 120:17-121:8.) Even though Dawson could not directly fire an employee, she played an important role in the firing process. Dawson decided when to make the call to the District Manager about a termination; according to Dawson, she did not have time to retrain employees, she would make the call and they would be terminated. (Id. at 100:10-12.) Overall while Dawson did not have the ultimate decision-making authority with respect to hiring, firing, and change of status of every employee, she made frequent recommendations as to those matters and her recommendations were almost always followed, thereby satisfying the requirement.

## CONCLUSION

Family Dollar has satisfied the Department of Labor regulations establishing that Dawson qualifies as an exempt executive under the FLSA. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

**IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 212) is **GRANTED** and Plaintiff Dawson is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Catherine Dawson's claim against Family Dollar;[6]

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Catherine Dawson.

**SO ORDERED.**

Signed: August 11, 2011

Graham C. Mullen
United States District Judge

---

[6] Indeed, this is one of approximately fifty ripe motions for summary judgment filed in this case. The Court anticipates that at least fifty more motions for summary judgement will be filed.