IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| FAMILY DOLLAR STORES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 241); Plaintiff's Response in Opposition (Doc. No. 357); and Defendant's Reply (Doc. No. 403).[1] For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

Plaintiff, Jodi Hare ("Hare"), began working for Family Dollar as a cashier in May of 1988. (Hare Dep. 24:18-19.) Hare was promoted to assistant manager in 1990 and promoted

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical). Therefore, Hare's collateral estoppel claim fails.

once again to store manager in 1992.³ (*Id*. at 18:16-25, 19:1-25.)³ As of July 28, 2001, Hare was making a salary of approximately $520 per week, and by October 2003, Hare was making a salary of approximately $535 per week. (DeBrocq Decl. ¶ 8.) From April 2007 to the end of May 2007, when she temporarily held the position of store manager, Hare received a salary of approximately $650 per week. (DeBrocq Decl. ¶ 8.)⁴ To date, with the exception of a short break beginning in October of 2003, Hare continues to be employed by Family Dollar at store 5258 as an assistant manager. (Hare Dep. 28.)

The record shows the five hourly employees working at Hare's store, when she managed store 1279, earned $6.75 or less per hour ($6.04 per hour when using the highest hourly wage for those employees whose wages changed over time) and the three hourly employees working at Hare's store, when she managed store 5258, earned on average $7.74 per hour. (DeBrocq Decl. ¶ 9.) Hare testified that she worked an average of sixty hours per week. (Hare Dep. 241:12-13.) Hare earned a bonus of $1,267.03 in 2002 and a bonus of $777.77 in 2003. (DeBrocq Decl. ¶ 10.)

---

³ Hare filed her opt-in consent form on July 28, 2004. Accordingly, July 28, 2001, or three years prior to her opt-in date, through the end of her management position in October 2003, represents the longest possible relevant time period for Hare's claims in this action.

³ The store in which Hare was employed as the store manager for 11 years, store 1279, closed in October of 2003. After a six to eight week break, Hare was rehired at store 5258 as an assistant manager. (Hare Dep. 27:18-22.) From April 2007 to May 2007, Hare was the temporary store manager because the old store manager, Judi Broussard, was needed at another store. (*Id*. at 28:13-17.) Judi subsequently returned to store 5258 in May 2007 and Hare regained the title of assistant manager and continues to be employed in that capacity. (*Id*. at 28-29.)

⁴ The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

Hare, as store manager, was the person responsible for running the store. (Hare Dep. 133:11-15.) Hare's tasks included attending district meetings, reporting and maintaining employee payroll, completing the store's weekly paper work, and maintaining the store's petty log. (*Id*. at 32:23-25, 33:1-5, 190:1-15, 191:1-25, 192: 1-5, 226:17-19, 228:5-9.) Additionally, Hare decided how to handle customer complaints (*Id*. at 82:6-10); how to adjust the schedule (*Id*. at 207:16-20); how to assign and apportion work among her employees (*Id*. at 114-116, 131-132); what tasks to address first (*Id*. at 116:7-12); and how to keep an eye on shrinkage (*Id*. at 160:5-23). Hare acknowledged that she did not cease being the store manager, even when performing nonexempt work. (*Id*. at 133:1-10.) Hare testified that while she was performing nonexempt work, she had "eyes in the back of [her] head" in case she was called upon to handle an issue that only a store manager could address. (*Id*. at 132:17-24.)

Hare acknowledged that she was the only one in the store with the authority to direct everyone else in the store to do their job. (*Id*. at 235:20-23.) Hare testified that she directed the work of her employees, stating that she had the "power and authority to direct [her] subordinates." (*Id*. at 115:2-25, 116:1-6.) During Hare's time at store 1279, she testified that she had a "crew" of four, two assistants and two cashiers (Hare Dep. 141:1-14), and had a budget to keep at least two full-time employees on schedule each week. (*Id*. at 135.) Additionally, Family Dollar's records reflect that Hare managed at least 80 employee hours 96.16% of the time she was a store manager. (DeBrocq Decl. ¶ 7.) She further testified that she hired a cashier (Hare Dep. 144:6-21, 146: 2-7) and she had never fired an employee, but admitted to having the authority to terminate an employee "on the spot." (*Id*. at 222:2-8.)

Ed Schiller, Hare's district manager at store 1279, typically visited the store once every two weeks (*Id*. at 52:16-25, 53:1-9) and was in contact with Schiller weekly by telephone and

3

email. (*Id*. at 57:14-25, 58:1-25, 59:1-17, 67:7-25, 68:1-13). Schiller had a territory of roughly twenty stores spanning approximately 100 miles. (*Id*. at 66:12-19.) Mr. Gill, Hare's district manager at store 5258, has a territory of roughly sixteen stores spanning approximately seventy-five miles. (DeBrocq Decl. ¶ 6.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all

4

evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The FLSA requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due the time span of Hare's claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the "pre-2004 regulations") and the regulations that went into effect on August 23, 2004 (the "current regulations").

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt execute. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[5] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary

---

[5] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

Similarly, the current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. Because Hare's claim covers the period of July 28, 2001[6] to October 2003 and April 2007 to May 2007, it is governed, in differing degrees, by both pre-2004 and current regulations. (Hare Dep. 18:25, 19:1, 28:13-23.) The application of the different regulations, however, is not material to the outcome of this case.

### 1. Family Dollar Satisfies the Salary Basis Test

As of July 28, 2001, Hare was making a salary of approximately $520 per week, and by October 2003, Hare was making a salary of approximately $535 per week. (DeBrocq Decl. ¶ 8.)[7] From April 2007 to the end of May 2007, when she temporarily held the position of store manager, Hare received a salary of approximately $650 per week. (*Id*.) Therefore, Family Dollar satisfies the salary basis test under both the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test, and the current regulations, which require a

---

[6] *See supra* FN. 3.

[7] *See supra* FN. 5.

weekly salary of not less than $455 per week. 29 C.F.R. § 541.1(f) (pre-2004); 29 C.F.R. § 541.100.

2.  **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).[8]

Upon consideration of the five factors identified for determining whether Hare's primary duty was management, the Court concludes that the factors are readily satisfied.

a. **The Amount of Time Spent in Performance of Managerial Duties**

Hare cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. Both sets of regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt

---

[8] The current regulations omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700.

7

work if other factors support the conclusion that management is their primary duty. *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011).

Both sets of regulations provide an almost identical list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.

29 C.F.R. § 541.102(b) (pre-2004).[9]

The current regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[10] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Forth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the

---

[9] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

[10] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

8

mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Hare devoted 90% of her time performing nonexempt work, she was also the person responsible for running the store. (Hare Dep. 133:11-15.) Whether or not she happened to be performing nonexempt work, at the same time, she did not cease from her duty as store manager. (*Id*. at 133:1-10.) Hare testified that when she was performing nonexempt work she had "eyes in the back of [her] head" in case she was called upon to handle an issue that only a store manager could address. (*Id*. at 132:17-24.) While Hare argues that management was not her primary duty because she spent a majority of her time dealing with freight and cleaning the store, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

        **b.**     **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Hare's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, hearing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Hare's managerial tasks, which included attending district meetings, reporting and maintaining employee payroll, completing the store's weekly paper work, and maintaining the store's petty log were critical to the operation of the store. (Hare Dep. 32:23-25, 33:1-5, 190:1-15, 191:1-25, 192: 1-5, 226:17-19, 228:5-9.) While Hare does argue that she was under the direct supervision of the district manager, she nonetheless stated that he came to the

store only once every two weeks – not enough to direct the managerial tasks. (*Id*. at 52:16-25, 53:1-9.) In fact, Hare acknowledged that she was the only one in the store with the authority to direct everyone else in the store to do their job. (*Id*. at 235:20-23) Therefore, the store could not have operated successfully without the managerial functions performed by Hare.

        c.        **Frequency With Which the Employee Exercises Discretionary Power**

Hare exercised discretion virtually every day and all day long in her capacity as store manager. Hare decided how to handle customer complaints (Hare Dep. 82:6-10); how to adjust the schedule (*Id*. at 207:16-20); how to assign and apportion work among her employees (*Id*. at 114-116, 131-132); what tasks to address first (*Id*. at 116:7-12); how to keep an eye on shrinkage (*Id*. at 160:5-23); and, while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, although Family Dollar maintains certain policies and procedures for the sake of consistency, Hare exercised a high level of discretion in deciding how to execute these policies and procedures. (Hare Dep. 39-40.)

        d.        **Relative Freedom from Supervision**

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over her shoulder." *Id*. The supervision of seventeen stores would hardly permit him to micro-manage all of them. *Id*. Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her

district manager" did not equate to exacting supervision. *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d at 508 (6th Cir. 2007).

Hare was relatively free from supervision in managing store 1279 and 5258. Hare testified that Ed Schiller, her district manager at store 1279, typically visited the store once every two weeks for twenty to thirty minutes duration each visit. (Hare Dep. 52:16-25, 53:1-9.) The infrequency of Schiller's visits and Hare's contact with Schiller weekly by telephone and email (*Id*. at 57:14-25, 58:1-25, 59:1-17, 67:7-25, 68:1-13) did not equate to exacting supervision. *See Thomas*, 506 F.3d at 508. Additionally, Schiller had a territory of roughly twenty stores spanning over 100 miles. (Hare Dep. 66:12-19.) Hare's second district manager, Mr. Gill, oversaw approximately sixteen stores in a territory that spanned approximately seventy-five miles. (DeBrocq Decl. ¶ 6.) The large number of stores each district manager was responsible for supervising did not allow them to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

### e. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Hare earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows the five hourly employees working at Hare's store earned $6.75 or less per hour ($6.04 per hour when using the highest hourly wage for those

11

employees whose wages changed over time) and the three hourly employees working at Hare's store when she managed store 5258 earned on average $7.74 per hour. (DeBrocq Decl. ¶ 9.) Hare testified that she worked an average of sixty hours per week. (Hare Dep. 241:12-13.) Hare earned compensation which, when computed on an hourly basis, averaged $8.66 per hour ($520 per week), $8.92 per hour ($535 per week), and $10.83 per hour ($650 per week). (DeBrocq Decl. ¶ 9.) As to the second consideration, Hare was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. Hare earned a bonus of $1,267.03 in 2002 and a bonus of $777.77 in 2003, for which nonexempt store employees were not eligible. (*Id*. at ¶ 10.) This reveals a significant difference in Hare's salary and the wages paid to her nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.100(a)(3). The pre-2004 regulations do not further define the terms "customary and regular," but the current regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Hare testified that, on a daily (constant) basis, she directed the work of her employees, stating that she had and used her "power and authority to direct [her] subordinates." (Hare Dep. 115:2-25, 116:1-6.)

Both sets of regulations also require the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a); 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a

total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). During Hare's time at store 1279, she testified that she had a "crew" of four, two assistants and two cashiers (Hare Dep. 141:1-14), and had a budget to keep at least two full-time employees on the schedule each week. (*Id*. at 135.) Additionally, Family Dollar's records reflect that Hare managed at least 80 employee hours 96.16% of the time she was a store manager. (DeBrocq Decl. ¶ 7.) Therefore, Hare customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

> **4.** **Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weigh**t

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire or fire other employees *or* her recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). Hare testified that she hired a cashier (Hare Dep. 144:6-21, 146: 2-7)[11] and she had never fired an employee, but admitted to having the authority to terminate an employee "on the spot." (*Id*. at 222:2-8.) Therefore, Hare's authority to hire or fire employees satisfies this factor and the Court need not determine whether Hare's recommendations or suggestions were given particular weight.[12]

---

[11] It does not escape the Court's attention that Hare hired a cashier before the relevant time period. The fact that Hare did a good job maintaining a staff during the relevant time period, such that she did not need to hire or fire any staff, does not defeat the exemption because she did have the authority to hire, even though she did not exercise that authority.

[12] There is no indication in Hare's deposition of whether her recommendations or suggestions, as to the hiring, firing, promotion, or any other change of status of other employees, were or were not given particular weight.

## CONCLUSION

Looking at the facts before us in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Hare as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 241) is GRANTED and Plaintiff Hare is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Jodi Hare's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Jodi Hare.

**SO ORDERED.**

Signed: September 26, 2011

Graham C. Mullen
United States District Judge