# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 355); Plaintiff's Response in Opposition (Doc. No. 440); and Defendant's Reply (Doc. No. 495).[1]  For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals.  The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc.  *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions.  The Court will also disregard exhibits based on the *Morgan* case.  In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same.  *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Eddie Mae Smith ("Smith"), began working for Family Dollar in January, 2005 as an Assistant Store Manager.[3] (Doc. No. 356, Smith Dep. at 54, 69, 80.)[4] Smith became a Store Manager in May, 2005. (Doc. No. 356, Debrocq Decl. ¶ 5.)[5] Over the course of her career at Family Dollar, Smith managed four different stores and resigned from her employment at Family Dollar in June, 2006. (*Id*.) At the time Smith became a Store Manager, Family Dollar paid Smith a salary of $700 per week. (*Id*; Smith Dep. at 131, 132.) In June, 2005, she received a pay increase to $750 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Smith earned bonuses of $547.95 in May, 2006 and $482.21 in June, 2006, for which nonexempt store employees were not eligible. (*Id*. ¶ 6; *Id*. at 225, 272.)

The record shows that of the fifty-nine (59) nonexempt employees who worked in the store where Smith was the store manager from May 2005 through June 2006, approximately forty-seven (47) earned $6.75 or less per hour (even using the highest wage for those employees

---

[3] Smith filed her opt-in consent form on January 25, 2007. Accordingly, January 25, 2004, or three years prior to his opt-in date, through the end of her management position in June, 2006 represents the longest possible relevant time period for Smith's claims in this action. Smith, however, became Store Manager in May, 2005. (Doc. No. 355, Debrocq Decl. ¶ 5.)

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts his sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. V. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony he gave in his deposition, where he was examined at length about his responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[5] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

whose wages changed over time received an average hourly wage of $6.63 per hour). (Doc. No. 356, Debrocq Decl. ¶ 9.) Family Dollar records also indicate that Smith worked an average of 56.3 hours per week as store manager. (*Id*. ¶ 7.) Family Dollar's records reflect that Smith managed at least 80 employee hours 98.08% of the time she was a store manager during the relevant time period. (*Id*. ¶ 8.)

Smith contends that she devoted 90-95% of her time performing nonexempt work, but also admitted to being the person responsible for the overall management of the store. (Doc. No. 356, Smith Dep. at 248, 276, 284.) For example, Smith admitted that she did not stop being the manager of the store just because she was unloading the truck, and that she was still responsible for safety of the employees and customers even if she was stocking a shelf or helping unload a truck. (*Id*. at 248-49.) Moreover, Smith testified that she never stopped paying attention to the shrink at the store. (*Id*. at 295.)

Smith's managerial tasks included training, supervising, and directing employees (*Id*. at 198, 242, 245), completing the store's financial paperwork (*Id*. at 105), apportioning hours to employees (*Id*. at 208-09, 211), and addressing customer complaints (*Id*. at 248-49). Smith also decided how to train her employees (*Id*. at 198); how to adjust the schedule (*Id*. at 208-09, 211); how to assign and apportion work among herself and her employees (*Id*. at 242, 245, 254); how to review employment applications and interview candidates (*Id*. at 160-61); and how to keep an eye on shrinkage (*Id*. at 295).

Smith testified that she was actively involved in the interviewing and employee screening process, and her District Manager often followed her recommendations. (*Id*. at 161). Smith testified at her deposition that she would take employment applications from applicants and would pass on to the District Manager those applications that she approved. (*Id*. at 162.) In

addition, Smith testified during her deposition that her position as store manager required that she make a recommendation as to who to hire. (*Id*. at 160-61.) Smith also testified that she recommended employees be terminated and her District Manager often followed her recommendations. (*Id*. at 179, 221.)

As Store Manager, Smith reported to a District Manager. She testified that her district manager would visit the store very rarely, maybe once a month, and stayed for only approximately thirty minutes. (*Id*. at 138, 140, 304-05.) Additionally, Smith testified that she spoke to her District Manager by telephone "five or six times a month." (*Id*. at 140-41.) Family Dollar's records indicate that Smith was store manager in two districts, 342 and 390. (Doc. No. 356, Debrocq Decl. ¶ 9.) In district 342, there were twenty-five stores and in district 390, there were fourteen stores, respectively, in territories that spanned the Memphis area. (*Id*.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

Similarly, the current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Smith qualifies as an exempt executive.

### 1. Family Dollar Satisfies the Salary Basis Test

At the time Smith became a Store Manager, Family Dollar paid Smith a salary of $700 per week. (Doc. No. 356, Debrocq Decl. ¶ 5; Smith Dep. at 131, 132.) In June, 2005, she received a pay increase to $750 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100.

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id*.)

Upon consideration of the factors identified for determining whether Smith's primary duty was management, the Court concludes that the factors are readily satisfied.

#### a. The Amount of Time Spent in Performance of Managerial Duties

Smith cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are *not required to spend more than fifty percent of their time performing exempt work* if other factors support the conclusion that management is their primary duty. *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[6]

29 C.F.R. § 541.102. Smith explicitly testified that she regularly performed *almost every one* of these management activities as a Family Dollar Store Manager.[7]

---

[6] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[7] The fact that non-exempt employees can perform the same tasks as Smith does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks

7

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[8] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Smith contends that she devoted 90-95% of her time performing nonexempt work, she was also the person responsible for the overall management of the store.[9] (Doc. No. 356, Smith Dep. at 248, 276, 284.) For example, Smith admitted that she did not stop being the manager of the store just because she was unloading the truck, and that she was still

---

does not render the tasks non-exempt.").

[8] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in her work week which she devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1). In addition, the regulations specifically recognize that certain executives, particularly in retail establishments, will often perform exempt work concurrently with nonexempt work. "Assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees . . . may have management as their primary duty even if the assistant managers spend more than 50 percent of their time performing nonexempt work . . . ." 29. C.F.R. § 541.700(c).

[9] The Court finds Smith's argument that she was merely a "working foreman" unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line.*" (emphasis added.) Thus, while 29. C.F.R. § 541.106(c) may preclude a "working supervisor" or foreman in the context of a manufacturing plant from being classified as exempt simply because they occasionally direct employees, 29 C.F.R. § 541.106(b), which addresses managers in a retail context, has no such preclusion.

8

responsible for safety of the employees and customers even if she was stocking a shelf or helping unload a truck. (*Id*. at 248-49.) Moreover, Smith testified that she never stopped paying attention to the shrink at the store. (*Id*. at 295.) While Smith argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

> **b.** **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Smith's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Smith's managerial tasks, which included training, supervising, and directing employees (Doc. No. 356, Smith Dep. at 198, 242, 245), completing the store's financial paperwork (*Id*. at 105), apportioning hours to employees (*Id*. at 208-09, 211), and addressing customer complaints (*Id*. at 248-49), were critical to the operation of the store. While Smith argues that she was under the direct supervision of the district manager, she nonetheless stated that he would visit the store very rarely, maybe once a month, and stayed for only approximately thirty minutes – not enough to direct the managerial tasks. (*Id*. at 138, 140, 304-05.) Therefore, because she was the *only person running the store*, the store could not have operated successfully without Smith's handling of these managerial tasks.

9

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores). Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Smith was relatively free from supervision during the relevant time period. Smith testified that her district manager would visit the store very rarely, maybe once a month, and stayed for only approximately thirty minutes. (Doc. No. 356, Smith Dep. at 138, 140, 304-05.) Additionally, Smith testified that she spoke to her District Manager by telephone "five or six times a month." (*Id*. at 140-41.) The infrequency of the visits and the infrequent contact by telephone does not equate to exacting supervision over Smith. *See Thomas*, 506 F.3d at 508. Moreover, Family Dollar's records indicate that Smith was store manager in two districts, 342 and 390. (Doc. No. 356, Debrocq Decl. ¶ 9.) In district 342, there were twenty-five stores and in district 390, there were fourteen stores, respectively, in territories that spanned the Memphis area. (*Id*.) The large territories and number of stores the District Manages were responsible for

supervising in each district does not allow them to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

> **d.  Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Smith earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the fifty-nine (59) nonexempt employees who worked in the store where Smith was the store manager from May 2005 through June 2006, approximately forty-seven (47) earned $6.75 or less per hour (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $6.63 per hour). (Doc. No. 356, Debrocq Decl. ¶ 9.) In comparison, Family Dollar's records indicate that Smith worked an average of 56.3 hours per week as store manager. (*Id*. ¶ 7.) Smith earned compensation which, when computed on an hourly basis, averaged $12.43 per hour ($700 per week) and $13.32 per hour ($750 per week).[10]

As to the second consideration, Smith was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Smith earned bonuses of $547.95 in May, 2006 and $482.21 in June, 2006, for which nonexempt store

---

[10]Smith's deposition testimony supports Family Dollar's records because Smith admitted to earning more than twice what Assistant Managers were making, not including her bonuses. (Doc. No. 365, Smith Dep. at 227.)

employees were not eligible. (Doc. No. 169, Debrocq Decl. ¶ 6; Smith Dep. at 225, 272.) A review of these calculations and comparisons reveal a significant difference in wages between Smith and her nonexempt employees.

    e.  **Frequency With Which the Employee Exercises Discretionary Power**

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Smith exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Smith decided how to train her employees (*Id*. at 198); how to adjust the schedule (*Id*. at 208-09, 211); how to assign and apportion work among herself and her employees (*Id*. at 242, 245, 254); how to review employment applications and interview candidates (*Id*. at 160-61); how to keep an eye on shrinkage (*Id*. at 295); and, while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Smith failed to exercise discretion in enforcing these policies and procedures.[11]

  3.  **Customary and Regular Direction of the Work of Two or More other Employees**

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). "The phrase 'customary and regular' means a frequency that must be greater than

---

[11]*See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 516 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Smith, on a daily basis, directed the work of her employees. (Doc. No. 356, Smith Dep. at 242, 245.)

The regulations also require the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Smith managed at least 80 employee hours 98.08% of the time she was a store manager during the relevant time period.[12] (Doc. No. 356, Debrocq Decl. ¶ 8.) Therefore, Smith customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

### 4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* her recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with

---

[12]Smith's deposition testimony supports Family Dollar's records because she testified that she managed at least two employees on a typical day. (Doc. No. 356, Smith Dep. at 240.)

which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status."[13] *Id*.

Smith recommendations as to the hiring and firing of other employees were given particular weight. With respect to hiring recommendations, Smith was actively involved in the interviewing and employee screening process, and her District Manager often *followed* her recommendations. (Doc. No. 356, Smith Dep. at 161). Smith testified at her deposition that she would take employment applications from applicants and would pass on to the District Manager those applications that she approved. (*Id*. at 162.) In addition, Smith testified during her deposition that her position as store manager required that she make a recommendation as to who to hire. (*Id*. at 160-61.) With respect to firing recommendations, Smith testified that she recommended employees be terminated and her District Manager often *followed* her recommendations. (*Id*. at 179, 221.) Therefore, Smith made frequent recommendations as to these matters to her District Manager and her recommendations were often followed, satisfying the particular weight requirement.

## CONCLUSION

---

[13]*See Davis v. Family Dollar Stores*, No. 3:03-0170 (D.S.C. Sept. 28, 2004) ("the record shows that plaintiff had considerable influence in the hiring and firing of employees in her store even though they ultimately had to be approved by higher management"); *Lovelady v. Allsup's Convenience Stores, Inc*., 304 F. App'x. 301, 305-06 (5th Cir. 2008) (managers who did not have ultimate authority still satisfied test where they made recommendations which were almost always followed); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 514 (4th Cir. 2011) (manager's suggestions regarding the hiring of employees were given significant weight when the manager followed those recommendations 95% of the time).

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Smith as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 355) is GRANTED and Plaintiff Eddie Mae Smith is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Eddie Mae Smith's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Eddie Mae Smith.

**SO ORDERED.**

Signed: December 1, 2011

Graham C. Mullen
United States District Judge