IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 261); Plaintiff's Response in Opposition (Doc. No. 359); Defendant's Reply (Doc. No. 400); and Defendant's Supplement to its Motion for Summary Judgment (Doc. No. 734).[1] For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Gwendolyn Sinns ("Sinns") began working for Family Dollar as an Assistant Store Manager in late 2004.[3] (Doc. No. 262, Sinns Dep. at 19-24.) In January 2005, Sinns was offered a Store Manager position, which she accepted. (Doc. No. 262, Debrocq Decl. ¶ 5.)[4] Over the course of her career with Family Dollar, Sinns managed only one store, Store No. 6189. (Doc. No. 262, Sinns Dep. at 36.) Sinns left Family Dollar in March 2007 because she was injured on the job. (*Id*. at 217.) At the time Sinns became a Store Manager, Family Dollar paid her a salary of $650 per week. (Doc. No. 262, Debrocq Decl. ¶ 5; Sinns Dep. at 36.) On May 14, 2006, she received a pay increase to $665 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.)

The record shows that of the twenty-three (23) nonexempt employees who worked in the store where Sinns was the store manager from January 2005 through March 2007, approximately sixteen (16) earned $6.50 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Sinns' stores received an average hourly wage of $6.43 per hour). (Doc. No. 262, Debrocq Decl. ¶ 8.) Sinns, on a daily basis, directed the work of her employees. (Doc. No. 262, Sinns Dep. at 128-29, 139-40.) Family Dollar's records reflect that Sinns managed at least 80 employee hours 90% of the time she was a store manager during the relevant time period. (Doc. No. 262, Debrocq Decl. ¶ 7.)

---

[3] Sinns filed her opt-in consent form on February 12, 2007. Accordingly, February 12, 2004, or three years prior to her opt-in date, through the end of her management position in May 2008, represents the longest possible relevant time period for Sinn's claims in this action. Sinns, however, became Store Manager in January 2005 and therefore the pre-2004 regulations are not applicable.

[4] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

Sinns contends that she devoted 80% of her time performing nonexempt work, but admitted that she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 262, Sinns Dep. at 18-19, 140-41, 152.) Sinns was responsible for directing and supervising her employees with regard to unloading freight from the truck and, at the same time, assisted in the unloading process. (*Id*. at 128, 218.) Sinns would also train, direct, and supervise her employees as she worked alongside them. (*Id*. at 80-81.) Moreover, while Sinns was performing manual tasks such as unloading the truck, she was also responsible for making sure the whole store ran successfully. (*Id*. at 140-41.)

Sinns' managerial tasks included training, supervising, and directing employees (*Id*. at 75-77, 80-81, 128-29), completing the store's financial paperwork (*Id*. at 174-79), apportioning hours to employees (*Id*. at 83), and addressing customer complaints (*Id*. at 193). Sinns also decided how to train her employees (*Id*. at 75-77, 90-81); how to adjust the schedule (*Id*. at 86); how to assign and apportion work among herself and her employees (*Id*. at 139); how to review employment applications and interview candidates (*Id*. at 38-40); how to arrange and decorate certain displays; and how to keep an eye on shrinkage (*Id*. at 120-21).

Sinns specifically testified that she was actively involved in the interviewing and employee screening process, and her District Manager almost always followed her recommendations. (*Id*. at 38-39, 50, 52, 57, 59-61, 164-65.) Part of Sinns' job duties included sitting down with the District Manager and providing input and recommendations regarding the performance and potential of her employees. (*Id*. at 37-39, 50-52, 57-58, 66-67, 107.) Sinns verified that her evaluations and recommendations for the promotion of at least two employees were followed. (*Id*. at 123-25.) Sinns also made recommendations to her District Manager to transfer employees to a different store, which were ultimately followed. (*Id*. at 51-52, 164-65.)

3

As Store Manager, Sinns reported to a District Manager. Sinns testified that her district manager would visit the store once every two to three weeks for a short visit. (*Id*. at 87.) Additionally, Sinns testified that she spoke to her District Manager by telephone "once a week [to] maybe five times in one day." (*Id*. at 87-88.) Moreover, Family Dollar's records indicate that, from January 2005 to July 2005, Sinns' District Manager oversaw approximately thirty-three (33) stores, including the store managed by Sinns. (Doc. No. 262, Debrocq Decl. ¶ 4.) The district spanned approximately 109 miles. (*Id*.) From July 2005 to March 2007, Sinns' District Manager oversaw approximately nineteen (19) stores, including the store managed by Sinns. (*Id*.) The district spanned approximately 149 miles. (*Id*.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

Similarly, the current regulations[5] provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or her

---

[5]*See supra* FN. 3.

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Sinns qualifies as an exempt executive.

### 1. Family Dollar Satisfies the Salary Basis Test

At the time Sinns became a Store Manager, Family Dollar paid her a salary of $650 per week. (Doc. No. 262, Debrocq Decl. ¶ 5; Sinns Dep. at 36.)[6] On May 14, 2006, she received a pay increase to $665 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100.

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id*.)

---

[6]*See supra* FN. 4.

Upon consideration of the factors identified for determining whether Sinns' primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

Sinns cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are *not required to spend more than fifty percent of their time performing exempt work* if other factors support the conclusion that management is their primary duty. *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[7]

---

[7] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

29 C.F.R. § 541.102. Sinns explicitly testified that she regularly performed *almost every one* of these management activities as a Family Dollar Store Manager.[8]

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[9] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Sinns contends that she devoted 80% of her time performing nonexempt work, she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 262, Sinns Dep. at 18-19, 140-41, 152.) For example, Sinns was responsible for directing and supervising her employees with regard to

---

[8]The Court disagrees with Sinns' argument that the use of a "team concept" in running her store creates a question of fact as to whether her primary duty was management. The fact that the Assistant Managers can perform the same tasks as Sinns does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

[9] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in her work week which she devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1). In addition, the regulations specifically recognize that certain executives, particularly in retail establishments, will often perform exempt work concurrently with nonexempt work. "Assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees . . . may have management as their primary duty even if the assistant managers spend more than 50 percent of their time performing nonexempt work . . . ." 29. C.F.R. § 541.700(c).

8

unloading freight from the truck and, at the same time, assisted in the unloading process. (*Id*. at 128, 218.) Sinns would also train, direct, and supervise her employees as she worked alongside them. (*Id*. at 80-81.) Moreover, while Sinns was performing manual tasks such as unloading the truck, she was also responsible for making sure the whole store ran successfully. (*Id*. at 140-41.) While Sinns argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

> b. **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Sinns' managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, her managerial tasks, which included training, supervising, and directing employees (Doc. No. 262, Sinns Dep. at 75-77, 80-81, 128-29), completing the store's financial paperwork (*Id*. at 174-79), apportioning hours to employees (*Id*. at 83), and addressing customer complaints (*Id*. at 193), were critical to the operation of the store. While Sinns argues that she was under the direct supervision of the district manager, she nonetheless stated that her district manager visited the store only once every two to three weeks – not enough to direct the managerial tasks. (*Id*. at 87.) Therefore, because she was the *only person running the store*, the store could not have operated successfully without her handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores). Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Sinns was relatively free from supervision during the relevant time period. Sinns testified that her district manager would visit the store once every two to three weeks for a short visit. (Doc. No. 262, Sinns Dep. at 87.) Additionally, Sinns testified that she spoke to her District Manager by telephone "once a week [to] maybe five times in one day." (*Id*. at 87-88.) The infrequency of the visits and the frequent contact by telephone does not equate to exacting supervision over Sinns. *See Thomas*, 506 F.3d at 508. Moreover, Family Dollar's records indicate that, from January 2005 to July 2005, Sinns' District Manager oversaw approximately thirty-three (33) stores, including the store managed by Sinns. (Doc. No. 262, Debrocq Decl. ¶ 4.) The district spanned approximately 109 miles. (*Id*.) From July 2005 to March 2007, Sinns' District Manager oversaw approximately nineteen (19) stores, including the store managed by

10

Sinns. (*Id.*) The district spanned approximately 149 miles. (*Id.*) The large territory and number of stores the District Manager was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Sinns earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twenty-three (23) nonexempt employees who worked in the store where Sinns was the store manager from January 2005 through March 2007, approximately sixteen (16) earned $6.50 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Sinns' stores received an average hourly wage of $6.43 per hour). (Doc. No. 262, Debrocq Decl. ¶ 8.) In comparison, Sinns worked an average of seventy-two (72) hours per week as store manager. (Doc. No. 734, Debrocq Decl. ¶ 3.) Sinns earned compensation which, when computed on an hourly basis, averaged $9.03 per hour ($650 per week) and $9.24 per hour ($665 per week).

As to the second consideration, Sinns was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Sinns earned bonuses of $590.23 in 2005 and $1,368.58 in 2006, for which nonexempt store

employees were not eligible. (Doc. No. 169, Debrocq Decl. ¶ 6.) A review of these calculations and comparisons reveal a significant difference in wages between Sinns and her nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). "The phrase 'customary and regular' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Sinns, on a daily basis, directed the work of her employees. (Doc. No. 262, Sinns Dep. at 128-29, 139-40.)

The regulations also require the employee to direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Sinns managed at least 80 employee hours 90% of the time she was a store manager during the relevant time period.[10] (Doc. No. 262, Debrocq Decl. ¶ 7.) Therefore, Sinns customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

---

[10]Sinns' deposition testimony supports Family Dollar's records because she testified that she supervised 2-3 employees in a given day when she was a store manager during the relevant time period. (Doc. No. 262, Sinns Dep. at 199-200.)

4.  **Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight**

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire or fire other employees or her recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status."[11] *Id*.

Sinns' recommendations as to hiring, promotion, and change of status of other employees were given particular weight. With respect to hiring recommendations, Sinns was actively involved in the interviewing and employee screening process, and her District Manager almost always followed her recommendations. (Doc. No. 262, Sinns Dep. at 38-39, 50, 52, 57, 59-61,

---

[11] *See Davis v. Family Dollar Stores*, No. 3:03-0170 (D.S.C. Sept. 28, 2004) ("the record shows that plaintiff had considerable influence in the hiring and firing of employees in her store even though they ultimately had to be approved by higher management"); *Lovelady v. Allsup's Convenience Stores, Inc*., 304 Fed.Appx. 301, 305-06 (5th Cir. 2008) (managers who did not have ultimate authority still satisfied test where they made recommendations which were almost always followed); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 514 (4th Cir. 2011) (manager's suggestions regarding the hiring of employees were given significant weight when the district manager followed those recommendations 95% of the time).

164-65.) With respect to recommendations for promotion, part of Sinns' job duties included sitting down with the District Manager and providing input and recommendations regarding the performance and potential of her employees. (*Id*. at 37-39, 50-52, 57-58, 66-67, 107.) Sinns verified that her evaluations and recommendations for the promotion of at least two employees were followed. (*Id*. at 123-25.) With respect to recommendations for change of status, Sinns made a recommendation to her District Manager to transfer an employee to a different store, which was ultimately followed.[12] (*Id*. at 51-52.) Therefore, Sinns made frequent recommendations as to these matters to her District Manager and her recommendations were almost always followed, satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Sinns as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1)  Defendant's Motion for Summary Judgment (Doc No. 261) is GRANTED and Plaintiff Gwendolyn Sinns is dismissed;

---

[12]The Court disagrees with Sinns' argument that the recommendation to transfer an employee is not significant enough to create a "change of status," as that term is used in the FLSA. Sinns' request that this Court apply the same meaning to "change of status" that courts in Title VII actions apply to the term "tangible employment action." The Supreme Court has explained that tangible employment action "constitutes a significant change in employment status such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Neither the Fourth Circuit, nor any district court within, have taken this approach. Notwithstanding Sinns' argument, her recommendations regarding hiring and promotion were followed by the District Manager and therefore meet this standard.

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Gwendolyn Sinns' claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Gwendolyn Sinns.

**SO ORDERED.**

Signed: February 3, 2012

Graham C. Mullen
United States District Judge