| | | |
|---|---|---|
| **IRENE GRACE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **FAMILY DOLLAR STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

    **THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 146); Plaintiff's Response in Opposition (Doc. No. 173); Defendant's Reply (Doc. No. 185); and Defendant's Supplements to its Motions for Summary Judgement for Remaining *Grace* and *Ward* Plaintiffs (Doc. No. 784).[1]  For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78).  On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172).  Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals.  The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc.  *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions.  The Court will also disregard exhibits based on the *Morgan* case.  In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Iva Tate ("Tate"), began working for Family Dollar as a store manager trainee in 2005.[3] (Doc. No. 147, Tate Dep. at 11, 17, 45.)[4][5] In May 2005, Tate was offered a store manager position, which she accepted. (Doc. No. 147, Tate Dep. at 11, 69-71; Doc. No. 784, Debrocq Decl. ¶ 3.)[6] At the time Tate became a store manager for Store Number 1657, Family Dollar paid her a salary of $750 per week. (Doc. No. 784, Debrocq Decl. ¶ 3.)[7][8] Tate continued to receive $750 per week until she ultimately resigned from her employment with Family Dollar in July 2006. (Doc. No. 147, Tate Dep. at 22, 70-71,76, 89-90; Doc. No. 784,

---

[3]Tate filed her opt-in consent form on January 25, 2007. Accordingly, January 25, 2004, or three years prior to her opt-in date, through the end of her management position in July 2006, represents the longest possible relevant time period for Tate's claims in this action. Tate did not become a store manager until June 2005, and therefore the pre-2004 regulations are not applicable.

[4]The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on numerous occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[5]The Court notes that Exhibit "A" to Tate's Declaration is not authenticated and not relevant to this case. Therefore, it is inadmissible under Rule 901 of the Federal Rules of Evidence. Even if Exhibit "A" were an authenticated version of Family Dollar's Strand 1 of Family Dollar's Training Reference Book, Tate does not explain how it would relate to the relevant time period in this case, namely, May 1, 2005 through July 2006. Thus, it is inadmissible under Rule 401 of the Federal Rules of Evidence. *See Lumoa v. Potter*, 351 F. Supp. 2d 426, 430-32 (M.D. N.C. 2004)(striking unauthenticated and otherwise improper documents).

[6]Tate became a store manager at some point between May 2005 and July 2005. Family Dollar's records indicate that Tate became a store manager in May 2005. ( Doc. No. 784-4, Debrocq. Decl. ¶ 3.) Tate testified in her deposition that she was promoted to store manager in "June or July of 2005." ( Doc. No. 147, Tate Dep. at 71, 76.)

[7]The Court is aware that Plaintiff objects to the admissibility of Morgan's and Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

Debrocq Decl. ¶ 3.)  Tate earned a bonus of $765.05 in 2005, for which nonexempt store

employees were not eligible.  (Doc. No. 784, Debrocq Decl. ¶ 3.)  Tate worked an average of

72.08 hours per week as store manager.  (*Id*. at ¶ 5.)

The record shows that of the forty-seven (47) nonexempt employees who worked in the

store where Tate was the store manager from May/June 2005 through July 2006, approximately

thirty-three (33) earned $6.50 or less per hour (even using the highest wage for those employees

whose wages changed over time, the nonexempt employees working at Tate's stores received an

average hourly wage of $6.93 per hour).  (Doc. No. 147, Morgan Decl. ¶ 5.)

Tate, on a daily basis, directed the work of her employees.  (Doc. No. 147, Tate Dep. at

174, 179, 180, 186, 204, 259.)  Family Dollar's records reflect that Tate managed at least 80

employee hours 100% of the time she was a store manager during the relevant time period.

(Doc. No. 147, Morgan Decl. ¶ 4.)

Tate contends that she devoted 80-90% of her time performing nonexempt work, but

admitted that she was also the person responsible for the overall management of the store for the

entire time she was in the store.  (Doc. No. 147, Tate Dep. at 85, 263.)  Tate admitted that she

managed the store, regardless of the fact that she may have been performing other activities in

the store at the same time.  (*Id.* at 262-263.)  For example, Tate would give direction to her

employees, look out for shoplifters, or identify what needed to be cleaned while she was

handling the cash register or performing other non-managerial tasks.  (*Id*.)

Tate's managerial tasks included completing the store's financial paperwork (*Id*. at 55),

apportioning hours to employees (*Id*. at 134-35,145), and addressing customer complaints (*Id*. at

175).  Tate also decided how to review employment applications (*Id.* at 108-10, 114); how to

handle theft (*Id*. at 207); how to adjust the schedule (*Id*. at 134-35, 45); how to assign and

apportion work among herself and her employees (*Id*. at 164-65); and what various types of merchandise to order (*Id*. at 166-67, 198-99).

As store manager, Tate reported to a district manager. Tate testified that her district manager would typically visit the store once every month. (Doc. No. 147, Tate Dep. at 90.) Additionally, Tate testified that her district manager was available by telephone or e-mail. (*Id*. at 90-91, 93.) Moreover, Family Dollar's records indicate that, from June 2005 to July 2006, Tate's district manager oversaw approximately thirty-two (32) stores, including the store managed by Tate. (Doc. No. 147, Morgan Decl. ¶ 3.) The district spanned approximately forty-six (46) miles from North to South and approximately sixty-five (65) miles from East to West. (*Id*.)

Tate specifically testified that she was actively involved in the interviewing and employee screening process, and that her district manager followed her recommendations more than half of the time. (Doc. No. 147, Tate Dep. at 109, 115, 117-18, 154.) Tate testified that she would review applications, identify suitable candidates, conduct pre-screening interviews, and make hiring recommendations to her district manager. (*Id.* at 108-10, 114-15). Tate also made recommendations for the termination of employees. (*Id.* at 209, 212-13.) Tate testified that her recommendation for the firing of at least two employees were followed by her district manager. (*Id*. at 210-12.) For example, Tate recommended that Antonio McClary be terminated because of cash shortages in his register and the district manager followed that recommendation. (*Id*. at 212- 13.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

Similarly, the current regulations[9] provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Tate qualifies as an exempt executive.

### 1.    Family Dollar Satisfies the Salary Basis Test

At the time Tate became a store manager in 2005, Family Dollar paid her a salary of $750 per week, which she received throughout the remainder of her employment with Family Dollar. (Doc. No. 147, Tate Dep. at 22, 70-71,76, 89-90; Doc. No. 784, Debrocq Decl. ¶ 3.)

---

[9]*See supra* FN. 3.

Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100.[10]

## 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. *Id.*

Upon consideration of the factors identified for determining whether Tate's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

Tate cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are *not required to spend more than fifty percent of their time performing exempt work* if other factors support the conclusion

---

[10]The fact that Defendant satisfies the salary basis test is bolstered by Tate's own concession in her Opposition to Defendant's Motion for Summary Judgment. Tate's Opposition states that "Plaintiff does not dispute that she met the salary requirements for either the 'short test' of the old regulations or the new regulations" (Doc. No. 173, Opp. at 16, n.4).

that management is their primary duty.[11]  *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

The regulations provide a  list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[12]

29 C.F.R. § 541.102.  Tate explicitly testified that she regularly performed almost every one of these management activities as a Family Dollar store manager.[13]

---

[11]The Court disagrees with Tate's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances."  *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003).  Tate's reliance on *Morgan v. Family Dollar Store's, Inc.,* 551 F.3d. 1233 (11th Cir. 2008) is misplaced because Tate fails to distinguish the many cases cited by Family Dollar which hold that summary judgment should be granted in factually similar circumstances.  Moreover, Tate's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that *specific case.* (emphasis added.) Additionally, Tate's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

[12]An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive.  *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[13]The fact that the assistant managers can perform the same tasks as Tate does not render her tasks and duties any less managerial.  Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial.  *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[14] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found that the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Tate contends that she devoted 80-90% of her time performing nonexempt work, she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 147, Tate Dep. at 85, 263.) Tate admitted that she managed the store, regardless of the fact that she may have been performing other activities in the store at the same time. (*Id.* at 262- 63.) For example, Tate would give direction to her employees, look out for shoplifters, or identify what needed to be cleaned or organized while she was handling the cash register or performing other non-managerial tasks. (*Id.*) While Tate argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these

---

[14] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in her work week which she devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1). In addition, the regulations specifically recognize that certain executives, particularly in retail establishments, will often perform exempt work concurrently with nonexempt work. "Assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees . . . may have management as their primary duty even if the assistant managers spend more than 50 percent of their time performing nonexempt work . . . ." 29. C.F.R. § 541.700(c).

duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

> **b.** **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Tate's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Tate's managerial tasks, which included supervising and directing employees (Doc. No. 147, Tate Dep. at 174, 179, 180, 186, 204, 259), completing the store's financial paperwork (*Id*. at 55), apportioning hours to employees (*Id*. at 134-35, 145), addressing customer complaints (*Id*. at 175), and controlling theft (*Id.* at 207) were critical to the operation of the store. While Tate argues that she was under the direct supervision of the district manager, she nonetheless stated that her district manager came to the store only once every month – not enough to direct the managerial tasks. (*Id*. at 90.) In fact, Tate acknowledged that she independently answered the questions of her employees, issued refunds and exchanges, and handled customer complaints when the district manager was not at the store. (*Id*. at 174-75.) Therefore, because she was the *only person running the store*, the store could not have operated successfully without Tate's handling of these managerial tasks.[15]

---

[15]The current regulations omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700.

10

### c.     Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores). Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Tate was relatively free from supervision during the relevant time period. Tate testified that her district manager, Ms. Treece, would typically visit the store only once every month. (Doc. No. 147, Tate Dep. at 90.) In addition, Tate testified that she spoke to her district manager by telephone approximately once or twice per week. (*Id*. at 90-91.) Tate further acknowledged that her district manager rarely communicated by e-mail. (*Id.* at 93-95). Specifically, Tate only received general e-mails that were addressed to the entire district from her district manager. (*Id.* at 93-95.) The infrequency of the visits and contact by telephone and e-mail does not equate to exacting supervision over Tate. *See Thomas*, 506 F.3d at 508.

Additionally, Family Dollar's records indicate that, from June 2005 to July 2006, Tate's district manager oversaw approximately thirty-two (32) stores, including the store managed by

Tate. (Doc. No. 147, Morgan Decl. ¶ 3.) The district spanned approximately forty-six (46) miles from North to South and approximately sixty-five (65) miles from East to West. (*Id.*) The large territory and number of stores the district manager was responsible for supervising did not allow her to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Tate earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the forty-seven (47) nonexempt employees who worked in the store where Tate was the store manager from June 2005 through July 2006, approximately thirty-three (33) earned $6.50 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Tate's stores received an average hourly wage of $6.93 per hour). (Doc. No. 147, Morgan Decl. ¶ 5.) In comparison, Tate worked an average of 72.08 hours per week as store manager. (Doc. No. 784, Debrocq Decl. ¶ 5.) Tate earned compensation which, when computed on an hourly basis, averaged $10.40 per hour ($750 per week).

As to the second consideration, Tate was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Tate earned

a bonus of $765.05 in 2005, for which nonexempt store employees were not eligible. (Doc. No. 784, Debrocq Decl. ¶ 3.) A review of these calculations and comparisons reveal a significant difference in wages between Tate and her nonexempt employees.[16]

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). "The phrase 'customary and regular' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Tate, on a daily basis, directed the work of her employees. (Doc. No. 262, Tate Dep. at 128-29, 139-40.)

The regulations also require that the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Tate managed at least 80 employee hours 100% of the time she was

---

[16]Tate's argument analyzing the highest earning nonexempt employee ($8.00) to compare that person's wage to her salary is not supported by citation to any authority. Courts have analyzed the wages of *all* of the nonexempt employees in making a wage comparison. *See Grace v. Family Dollar Stores Inc.,* 637 F.3d at 517 (Plaintiff's calculated salary of $9.62 to $12.02 per hour was significantly more than the hourly employees at Family Dollar, who earned an average wage of $5.81 per hour); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 508-09 (6th Cir. 2007) (Plaintiff's calculated salary of $10.44 was significantly more than the typical hourly wage of $7.00 paid to nonexempt employees); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 638-39 (4th Cir. 2003) (holding that this factor weighed in favor of the defendant where plaintiff made approximately $165 more than the average hourly worker).

a store manager during the relevant time period.[17]  (Doc. No. 147, Morgan Decl. ¶ 4.)  Therefore, Tate customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

4.     **Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight**

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire or fire other employees or her recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon."  29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status."[18]  *Id.*

---

[17]Tate's deposition testimony also supports Family Dollar's records. While referencing her store schedule, Tate testified that she supervised approximately four (4) employees.  (Doc. No. 146, Tate Dep. at 86, 101.)

[18]*See Davis v. Family Dollar Stores*, No. 3:03-0170 (D.S.C. Sept. 28, 2004) ("the record shows that plaintiff had considerable influence in the hiring and firing of employees in her store even though they ultimately had to be approved by higher management"); *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed.Appx. 301, 305-06 (5th Cir. 2008) (managers who did not have ultimate authority still satisfied test where they made recommendations which were almost always followed); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 514 (4th Cir. 2011) (manager's suggestions regarding the hiring of employees were given significant weight when the district manager followed those recommendations 95% of the time).

Tate's recommendations as to the hiring and firing of other employees were given particular weight. With respect to hiring recommendations, Tate was actively involved in the interviewing and employee screening process, and her district manager followed her recommendations over half of the time. (Doc. No. 147, Tate Dep. at 109, 115, 117-18, 154.) Tate testified that she would review applications, identify suitable candidates, and conduct pre-screening interviews. (*Id.* at 108-10, 114.) After the screening process, Tate would then make a hiring recommendation to her district manager. (*Id*. at 115.) With respect to firing recommendations, Tate testified that if an employee engaged in intolerable conduct, then she would contact her district manager and recommend that the employee be terminated. (*Id.* at 209, 212- 13.) Tate verified that her recommendation for the firing of at least two employees were followed by her district manager. (*Id*. at 210-12.) For example, Tate recommended that Antonio McClary be terminated because of cash shortages in his register and her district manager followed that recommendation. (*Id*. at 212- 13.) Therefore, Tate made frequent recommendations as to these matters to her district manager and her recommendations were frequently followed, satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Tate as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1)     Defendant's Motion for Summary Judgment (Doc No. 146)  is GRANTED and Plaintiff Iva Tate is dismissed;

(2)     The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Iva Tate's claim against Family Dollar; and

(3)     The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Iva Tate.


**SO ORDERED.**



Signed: July 31, 2012

Graham C. Mullen
United States District Judge