IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )     **ORDER** |
| | ) |
| FAMILY DOLLAR STORES, INC., | ) |
| | ) |
|       Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 259); Plaintiff's Response in Opposition (Doc. No. 371); and Defendant's Reply (Doc. No. 408).[1] For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Alfred Blair ("Blair"), began working for Family Dollar as an assistant store manager in September 2004.[3] (Doc. No. 260, Blair Dep. at 50, 54.)[4] In October 2004, Blair was offered a store manager position for Store Number 942. (*Id.* at 82-84.) Shortly after receiving the offer, Blair decided to leave Family Dollar for a position at Old Time Pottery. (*Id.*) At the time of his resignation in October of 2004, Family Dollar paid Blair a salary of $812.50 per week. (Doc. No. 260; Blair Dep. at 54-56; Debrocq Decl. ¶ 5.)[5]

In June 2005, Family Dollar re-hired Blair as an assistant store manager. (Doc. No. 260, Debrocq Decl. ¶ 5.) In August 2005, Blair was offered a store manager position, which he accepted. (*Id.*) At the time Blair became a store manager for Store Number 758, Family Dollar paid him a salary of $866.66 per week. (*Id.*) Blair continued to receive $866.66 per week until he ultimately resigned from his employment with Family Dollar in December 2005. (*Id.*)

---

[3] Blair filed his opt-in consent form on January 25, 2007. Accordingly, January 25, 2004, or three years prior to his opt-in date, through the end of his management position in December 2005, represents the longest possible relevant time period for Blair's claims in this action. Blair did not become a store manager until September 2004, so the pre-August 2004 regulations do not apply.

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts his sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony he gave in his deposition, where he was examined at length about his responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[5] The Court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

The record shows that of the twenty (20) nonexempt employees who worked in the stores where Blair was the store manager from September through October 2004, and from June through December 2005, approximately fifteen (15) earned $6.50 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Blair's stores received an average hourly wage of $7.01 per hour). (Doc. No. 260, Debrocq Decl. ¶ 9.)

Blair, on a daily basis, directed the work of his employees. (Doc. No. 260, Blair Dep. at 58-59, 90, 124, 127-29, 157.) Family Dollar's records reflect that Blair managed at least 80 employee hours 100% of the time he was a store manager during the relevant time period. (Doc. No. 260, Debrocq Decl. ¶ 8.)

Blair contends that he devoted 95% of his time performing nonexempt work, but admitted that he was also the person responsible for the overall management of the store for the entire time he was in the store. (Doc. No. 260; Blair Dep. at 124-25, 135, 138, 233.) Blair was responsible for directing his employees and dealing with customer complaints even while cleaning or stocking a shelf. (*Id.* at 136-37.) Blair would also evaluate the condition of the store and watch out for theft while simultaneously running one of the cash registers. (*Id*. at 138, 40.) Moreover, Blair had the discretion to choose which tasks to perform himself and which tasks to delegate to his employees. (*Id.* at 124-25.)

Blair's managerial tasks included supervising and directing employees (*Id.* at 90, 94-95, 124, 127-29, 209, 217-18), completing the store's financial paperwork (*Id*. at 174-79), apportioning hours to employees (*Id*. at 177-81), and addressing customer complaints (*Id*. at 136-37). Blair also decided how to train his employees (*Id*. at 204-06); how to adjust the schedule (*Id*. at 127-29,157); how to assign and apportion work among himself and his

3

employees (*Id*. at 124-29); how to review employment applications and interview candidates (*Id*. at 150-51, 184); and how to keep an eye on shrinkage (*Id*. at 165).

Blair specifically testified that he was actively involved in the interviewing and employee screening process, and that his district manager frequently followed his recommendations. (*Id*. at 150-51.) For example, Blair recommended that his district manager hire two former Old Time Pottery co-workers. (*Id*. at 166-69.) The district manager followed his recommendation, hired both individuals, and placed them in Blair's store as assistant store managers. (*Id.*) Blair also made recommendations for the transfer of employees to different stores. (*Id*. at 202-03.) Specifically, Blair recommended that Mr. Levy be transferred to a different store, and the district manager followed that recommendation. (*Id.*)

As store manager, Blair reported to a district manager. Blair testified that his district manager briefly visited the store two or three times every month for a short visit. (*Id*. at 110-11, 113.) Blair further testified that, as time passed, his district manager visited less and less. (*Id.*) Additionally, Blair testified that his district manager was available by telephone or e-mail. (*Id.* at 111.) Moreover, Family Dollar's records indicate that from June 2005 to December 2005, Blair's district manager oversaw approximately twenty-eight (28) stores, including the store managed by Blair. (Doc. No. 260, Debrocq Decl. ¶ 4.) The district spanned the entire Memphis area. (*Id*.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and

4

identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity."

5

29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations[6] provide that an employee qualifies as an executive if: (1) he is compensated on a salary basis at a rate of at least $455 per week; (2) his primary duty is management of the enterprise; (3) he customarily and regularly directs the work of two or more other employees; and (4) he has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Blair qualifies as an exempt executive.

### 1. Family Dollar Satisfies the Salary Basis Test

Blair began working for Family Dollar as an assistant store manager in September 2004, but resigned in October 2004. (Doc. No. 260, Blair Dep. at 50, 54, 82-84.) At the time of his resignation, Family Dollar paid Blair a salary of $812.50 per week. (Doc. No. 260; Blair Dep. at 54-56; Debrocq Decl. ¶ 5.) When Blair became a store manager again in August 2005, Family Dollar paid him a salary of $866.66 per week, which he received throughout the remainder of his employment with Family Dollar. (*Id*.) Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100. [7]

---

[6]*See supra* FN. 3.

[7]The Court finds Blair's argument that he was merely a "working foreman" unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the

## 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Blair's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

Blair cannot overcome the exemption by claiming he spent the majority of his time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are *not required to spend more than fifty percent of their time performing exempt work* if other factors support the conclusion

---

"*production line.*" (emphasis added.)

that management is their primary duty.[8] *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[9]

29 C.F.R. § 541.102. Blair explicitly testified that he regularly performed *almost every one* of these management activities as a Family Dollar store manager.[10]

---

[8] The Court disagrees with Blair's contention that failure to meet the fifty (50) percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the fifty (50) percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Blair's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the fifty (50) percent rule to that *specific case*. (emphasis added.) Additionally, Blair's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

[9] An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[10] The fact that the assistant managers can perform the same tasks as Blair does not render his tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[11] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that he was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Blair contends that he devoted 95% of his time performing nonexempt work, he was also the person responsible for the overall management of the store for the entire time he was in the store. (Doc. No. 260; Blair Dep. at 124-25, 135, 138, 233.) For example, Blair confirmed that he was responsible for directing his employees and dealing with customer complaints even while cleaning or stocking a shelf. (*Id.* at 136-37.) Blair would also evaluate the condition of the store and watch out for theft while simultaneously running one of the cash registers. (*Id.* at 138, 140.) Moreover, Blair had the discretion to choose which tasks to perform himself and which tasks to delegate to his employees. (*Id.* at 124-25.) While Blair argues that management was not his primary duty because he spent a majority of his time

---

[11]The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1). In addition, the regulations specifically recognize that certain executives, particularly in retail establishments, will often perform exempt work concurrently with nonexempt work. "Assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees . . . may have management as their primary duty even if the assistant managers spend more than 50 percent of their time performing nonexempt work . . . ." 29. C.F.R. § 541.700(c).

9

engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Blair's managerial duties were more important than the other duties he performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Blair's managerial tasks, which included supervising and directing employees (Doc. No. 260, Blair Dep. at 90, 94-95, 124, 127-129, 209, 217-218), completing the store's financial paperwork (*Id*. at 174-79), apportioning hours to employees (*Id*. at 177-81), and addressing customer complaints (*Id*. at 136-37), were critical to the operation of the store. While Blair argues that he was under the direct supervision of the district manager, he nonetheless testified that his district manager visited the store only two or three times every month- not enough for the district manager to direct the managerial tasks. (*Id*. at 110-11, 113.) Blair further testified that his district manager visited the store less and less as time passed. (*Id.*) Therefore, because Blair was the *only person running the store*, the store could not have operated successfully without his handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to

three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores). Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with his district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Blair was relatively free from supervision during the relevant time period. Blair testified that his district manager would visit the store two or three times every month for a short visit. (Doc. No. 260, Blair Dep. at 110-11, 113.) Blair testified that his district manager was available by telephone or e-mail, but did not allege that the contact was frequent. (*Id.* at 111). The infrequency of the visits and contact by telephone and e-mail does not equate to exacting supervision over Blair. *See Thomas*, 506 F.3d at 508. Moreover, Family Dollar's records indicate that, from June 2005 to December 2005, Blair's district manager oversaw approximately twenty-eight (28) stores, including the store managed by Blair. (Doc. No. 260, Debrocq Decl. ¶ 4.) The district spanned the entire Memphis area. (*Id*.) The large territory and number of stores the district manager was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of his compensation. *Id.*

As to the first consideration, Blair earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twenty (20) nonexempt employees who worked in the store where Blair was the store manager from September 2004 through October 2004, and from June 2005 through December 2005, approximately fifteen (15) earned $6.50 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Blair's stores received an average hourly wage of $7.01 per hour). (Doc. No. 260, Debrocq Decl. ¶ 9.) In comparison, Blair worked an average of forty-nine and one-tenth (49.01) hours per week as store manager. (*Id.* at ¶ 7.) Blair earned compensation which, when computed on an hourly basis, averaged $16.58 per hour ($812.50 per week) and $17.68 per hour ($866.66 per week).

As to the second consideration, Blair was a "profit center;" his performance evaluation, salary, and bonus depended on his store's profitability. *See Grace*, 637 F.3d at 517. Blair earned a bonus of $314.14 in 2005, for which nonexempt store employees were not eligible. (Doc. No. 260, Debrocq Decl. ¶ 6.) A review of these calculations and comparisons reveal a significant difference in wages between Blair and his nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). "The phrase 'customary and regular' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Blair, on a daily basis, directed the work of his employees. (Doc. No. 260, Blair Dep. at 90, 94-95, 124, 127-129, 209, 217-218.) The regulations also require the employee to direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that he was store manager). Family Dollar's records reflect that Blair managed at least 80 employee hours 100% of the time he was a store manager during the relevant time period.[12] (Doc. No. 260, Debrocq Decl. ¶ 8.) Therefore, Blair customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

### 4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his

---

[12] Blair's deposition testimony supports Family Dollar's records because he testified that he typically supervised 6 part-time employees and an assistant manager in a given day while he was a store manager during the relevant time period. (Doc. No. 260, Blair Dep. at 170, 175, 180.)

recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4) (emphasis added). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status."[13] *Id*.

Blair's recommendations as to hiring and change of status of other employees were given particular weight. With respect to hiring recommendations, Blair was actively involved in the interviewing and employee screening process, and his district manager frequently followed his recommendations. (Doc. No. 260, Blair Dep. at 150-51.) For example, Blair recommended that his district manager hire two former Old Time Pottery co-workers and the district manager followed his recommendation, hired both individuals, and placed them in Blair's store as assistant store managers. (*Id*. at 166-69.) With respect to recommendations for change of status, Blair made recommendations to transfer employees to different stores, which were ultimately

---

[13]*See Davis v. Family Dollar Stores*, No. 3:03-0170 (D.S.C. Sept. 28, 2004) ("the record shows that plaintiff had considerable influence in the hiring and firing of employees in her store even though they ultimately had to be approved by higher management"); *Lovelady v. Allsup's Convenience Stores, Inc*., 304 Fed. Appx. 301, 305-06 (5th Cir. 2008) (managers who did not have ultimate authority still satisfied test where they made recommendations which were almost always followed); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 514 (4th Cir. 2011) (manager's suggestions regarding the hiring of employees were given significant weight when the district manager followed those recommendations 95% of the time).

followed. (*Id*. at 202-03.) For example, Blair recommended that Mr. Levy be transferred to a different store, and the district manager followed that recommendation. (*Id.*) Therefore, Blair made frequent recommendations as to these matters to his district manager and his recommendations were frequently followed, satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Blair as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 259) is GRANTED and Plaintiff Alfred Blair is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Alfred Blair's claim against Family Dollar; and

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Alfred Blair.

**SO ORDERED.**

Signed: July 31, 2012

Graham C. Mullen
United States District Judge